UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 16 CR 107 |
| v. | ) | |
| | ) | Honorable Jeffrey T. Gilbert |
| GABRIEL ROSAS | ) | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF CONTINUED
DETENTION OF DEFENDANT GABRIEL ROSAS**

The UNITED STATES OF AMERICA, through its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully files the instant "Memorandum in Support of Continued Detention of Defendant Gabriel Rosas" and states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 24, 2016, defendant was arrested by federal law enforcement in the context of a larger law enforcement takedown related to the Latin Kings street gang in Joliet, Illinois. Rosas was charged by complaint with possession of a firearm by a convicted felon and distribution of cocaine, both occurring on or about March 18, 2015. (R.1). On or about March 24, 2015, a grand jury sitting in the Northern District of Illinois returned an indictment against Rosas, finding probable cause for the charges in the Complaint as well as another charge of being a felon in possession of a firearm on or about December 31, 2014. (R.15). Defendant has been detained since his arrest on February 24, 2016.

The government, now having the benefit of a Pretrial Services Report, contends that no condition or combination of conditions would reasonably assure the

1

appearance of the defendant as required and the safety of any other person and the community.

## ANALYSIS

The Bail Reform Act, codified at Title 18, United States Code, Section 3142, establishes a set of factors that the Court may consider in its detention determination, including the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and the history and characteristics of the defendant. 18 U.S.C. § 3142(g). The Federal Rules of Evidence do not apply at a detention hearing. *See* Fed.R.Evid. 1101(d)(3); *see also* 18 U.S.C. § 3142(f). With respect to risk of flight, the government bears the burden of proof beyond a preponderance of the evidence; with respect to danger to the community, the government bears the burden of proof by clear and convincing evidence. *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985); *United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985). A finding of either danger to the community or a flight risk is sufficient to detain a defendant awaiting trial; a court need not find both to detain a defendant under the Bail Reform Act. *Id.*

Here however, given that Rosas has been charged with a violation of the Controlled Substances Act, 21 U.S.C. 841, *et seq.*, for which the maximum term of imprisonment is potentially ten years or more, *see* (R.15, Indictment, Count Three), a rebuttable presumption arises that no condition or combination of conditions can be imposed that will reasonably assure the safety of any person or the community and the appearance of defendant as required to respond to the charges. 18 U.S.C. §

2

3142(e). The presumption shifts the burden of production or going forward (but not the burden of persuasion) onto the defendant to come forward with some evidence that if released he will not flee or endanger the community. *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985). Even if the defendant rebuts it, the presumption remains in the case as an evidentiary finding militating against release. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

For the reasons that follow, defendant has not set forth any evidence to rebut the presumption here, and to the extent that the Court finds defendant has rebutted the presumption, there are still no conditions or combination of conditions that would reasonably assure the safety of the community and defendant's appearance. Accordingly, defendant should be detained pending trial.

I. **Factors under 18 U.S.C. § 3142(g)**

    A. *Nature and Circumstances of the Offense*

First, the nature and circumstances of the offense charged and the weight of the evidence both support Defendant's continued detention. The instant charges concern Rosas's sale of a firearm to a confidential source working with law enforcement on or about December 31, 2014, and the subsequent sale of two additional firearms and approximately 30 grams of cocaine to the same confidential source on or about March 18, 2015.[1] In both instances, the transaction meetings between the confidential source and Rosas were audio and video recorded, and both deals occurred in the basement apartment of a residence on the 1100 block of Elgin

---

[1] For a detailed factual recitation of the charged offenses, *see* R.1 ("Complaint").

Avenue in Joliet, Illinois. In addition, upon his arrest by federal law enforcement on or about February 24, 2016, at the same basement apartment, Rosas was arrested in the bathroom while attempting to dispose of what appeared to be suspect marijuana into the toilet.[2] During a subsequent interview, Rosas admitted his criminal conduct and acknowledged selling firearms and cocaine to the confidential source.

In light of defendant's criminal history detailed below, Rosas likely qualifies as an armed career criminal under 18 U.S.C. § 924(e)(1) and faces a mandatory minimum of 15 years' imprisonment with respect to the firearms charges. *United States v. Diaz*, 777 F.2d 1236, 1238 (7th Cir. 1985) (addressing the presumption in favor of detention under the 18 U.S.C. § 3142 and explaining that "[t]he presumption reflects a congressional judgment, to which we are obligated to give weight, that persons facing heavy sentences for particular types of offenses are likely to jump bail").

B.  *Defendant's Criminal History*

The history and characteristics of defendant further demonstrate why detention is necessary here. As detailed below and in the supporting documentation attached, defendant has at least seven felony criminal convictions, which, independent of the presumption, demonstrate that Rosas is a clear danger to the community:

---

[2] Because, by the time federal law enforcement arrived, the suspect marijuana was already in the toilet, the government did not seize it but disposed of it.

4

- On or about September 18, 1995 defendant was convicted of "carry/possess a firearm" (1995CF2097). Rosas received a sentence of one year of conditional discharge. No underlying facts are available.

- On or about September 26, 1995, defendant was convicted of aggravated discharge of a firearm (1995CF4366). Rosas received a sentence of four years' imprisonment.[3] According to documents obtained by the government attached here as Exhibit A, on or about May 27, 1995, "Defendant [Rosas] fired a gun at the home of arrival gang member and almost hit [a victim], who was walking his dog." (Exh. A, "Official Statement of Facts"). Exhibit A further detailed how Rosas was then "a member of the latin kings street gang." (Exh. A, "Official Statement of Facts").

- On or about June 7, 1996, defendant was convicted of possession of contraband in a penal institution (96CF215). Rosas received a sentence of two years' imprisonment. According to documents attached here as Exhibit E, defendant possessed cannabis while incarcerated at the Sheridan Correctional Center. (Exh. E, Indictment).[4]

- On or about November 24, 1998, defendant was convicted of conspiracy to commit first degree murder (96CF2029). Rosas received a sentence of 10 years' imprisonment. According to documents obtained by the government attached here as Exhibit B, on or about March 25, 1992,

---

[3] This conviction was not detailed in the pretrial services report.
[4] This conviction was not detailed in the pretrial services report.

Rosas was talking with other Latin King gang members and discussing "'taking care of business,' ie doing a drive by gang shooting. Gabe Rosas admitted that he gave a 9 mm Glock and .38 special handgun to [another Latin King gang member], which were later used, according to Gabe Rosas to kill [the victim]." (Exh. B, "Official Statement of Facts"). Defendant was released from parole on or about May 21, 2004.

- On or about June 13, 2007, defendant was convicted of unlawful possession of a controlled substance with intent to deliver (05CF483). Rosas received a sentence of nine years' imprisonment. According to documents obtained by the government attached here as Exhibit C, on or about March 9, 2005 and while on parole related to his conspiracy-to-commit-murder conviction, Rosas possessed with the intent to deliver 100-400 grams of cocaine. (Exh. C, Indictment). Rosas received a bond in the above drug-trafficking case on or about February 17, 2006, and, as noted above, did not enter a plea of guilty until on or about June 13, 2007. (*See* Pretrial Services Report, at 5).

- On or about June 13, 2007, defendant was convicted of aggravated battery (2006CF2711). According to the documents obtained by the government attached here as Exhibit D, on or about October 15, 2006 and while on bond in relation to the above drug-trafficking offense, Rosas struck a female victim "about [her] body while [the victim] was

on or about the public way," specifically a parking lot in Joliet, Illinois. (Exh. D, Indictment). Defendant received a sentence of two years' imprisonment.

- Also while on bond for the above drug-trafficking offense, Rosas was arrested on four more occasions for knowing damage to property (June 15, 2006), battery and resisting a peace officer (November 4, 2006), possession of cannabis (March 1, 2007), and driving under the influence of alcohol and other traffic-related offenses (March 24, 2007), all of which were *nolle prossed*.

In addition, according to documents related to defendant's conspiracy to commit murder conviction, Rosas was also convicted of unlawful possession of a controlled substance with intent to deliver in 97 CF 2631, however, the underlying facts are not available. *See* (Exh. B, "Official Statement of Facts").

Defendant's criminal history is not only extensive, but it involves multiple, active instances of violence against other persons, as well as the commission of additional offenses while on bond or parole, a factor that weighs in strongly in favor of detention.

    C.    *Other Factors*

Other factors weigh in favor of defendant's danger to the community and risk of non-appearance.

7

First, defendant admitted drug use to the pretrial services report, specifically using marijuana three times daily, albeit, according to him, in relation to pain management for his medical condition. On or about February 26, 2016, two days after his arrest, defendant tested positive for cannabinoids. Defendant has not produced any documentation reflecting a prescription for the use of marijuana from a licensed health care professional.

Second, while the pretrial services report details Rosas's lifelong residence in the Northern District of Illinois, Rosas also explained how he traveled to Mexico in the last year on three occasions. (Pretrial Services Report, at 2). In addition, Rosas acknowledged that he does not have a passport. (*Id.*). Accordingly, it is clear that Rosas reentered the United States from Mexico on three occasions in 2015 without inspection, demonstrating an ability to, and familiarity with, how to skirt immigration laws and requirements. In combination with the other evidence explained herein, as well as the pretrial services report, defendant's admitted travel to Mexico in the last year and re-entry into the United States without the proper documentation to do so establishes by a preponderance of the evidence that Rosas is a risk of non-appearance.

Third, defendant's lifelong gang involvement cuts against giving him a bond. As far back as the early 1990s, defendant admitted to being a member of the Latin Kings in Joliet, Illinois, a violent street gang that claims over 25,000 members in the Chicagoland area alone. *See* http://chicagogangs.org/index.php?pr=LATIN_KINGS (last visited March 28, 2016).

In the context of the current case and broader investigation, moreover, which focused on the Joliet Latin Kings, it is clear that defendant remains an active member with the Latin Kings, or the Almighty Latin King Nation, as they are formally known.

    D.    *Defendant's Medical Condition*

In the pretrial services report, defendant reported that he has, since 2012, suffered from cancer, which has spread to his abdomen, lungs, and spine. (pretrial Services Report, at 2). Defendant represented to the Court that he intended to present evidence in the form of medical records detailing his condition, and that he would share that evidence with the government. As of the date and time of this filing (March 28, 2016, at approximately 7:20 p.m.), the government has not received any documentation from defendant detailing the severity or current status of his medical condition. A defendant's health is one of many other factors a court is to consider under Title 18, United States Code, Section 3142(g). *See* 18 U.S.C. § 3142(g)((3)(A) (instructing courts to consider, among other things, a defendant's "physical and mental condition").

Furthermore, even if defendant produced such medical records related to his medical condition, they cannot rebut the presumption here and defendant still remains a risk of nonappearance and danger to the community. According to defendant himself, he was diagnosed in 2012 and the cancer spread to three places at an undisclosed time. Within the past year, however, defendant has remained healthy enough to travel to Mexico in February 2015 for one week, in November

2015 for a weekend, and in December 2015 for two weeks. Likewise, despite his ailments, defendant was able to (or at least a jury has found probable cause that defendant was able to) (1) sell one firearm to a confidential source on December 31, 2014, and (2) sell two more firearms and approximately 30 grams of cocaine to the same source on March 18, 2015.

The government does not doubt that Rosas suffers from some form of cancer, although the extent and severity of it remains unknown, and the government does not intend to either belittle or diminish what is a serious diagnosis. Defendant, just like many other defendants, can and will receive adequate health care while incarcerated pre-trial and held by the United States Marshals Service. While defendant's health is serious, so is the charged criminal conduct as well as defendant's criminal history, and defendant's medical condition does not rebut either the danger to the community or the risk of nonappearance.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in the pretrial services report, the United States respectfully requests that this Court enter an order detaining the defendant pending trial.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

/s/Timothy J. Storino
TIMOTHY J. STORINO
Assistant United States Attorney
219 South Dearborn St., Fifth Floor
Chicago, Illinois 60604
(312) 353-5347