1  **TRANSCRIBED FROM DIGITAL RECORDING**

2  IN THE UNITED STATES DISTRICT COURT
   NORTHERN DISTRICT OF ILLINOIS
3  EASTERN DIVISION

4  UNITED STATES OF AMERICA,    )
                                )
5       Plaintiff,              )
                                )
6       vs.                     ) No. 16 CR 107-1
                                )
7  GABRIEL ROSAS, also known as Gabe,  ) Chicago, Illinois
                                ) March 1, 2016
8       Defendant.              ) 2:06 P.M.

9       TRANSCRIPT OF PROCEEDINGS - Detention Hearing
   BEFORE THE HONORABLE JEFFREY T. GILBERT, Magistrate Judge
10
   APPEARANCES:
11
   For the Government:    HON. ZACHARY FARDON
12                         219 South Dearborn Street
                           Chicago, Illinois  60604
13                         BY:  MR. WILLIAM DUNNE

14 For the Defendant:     RASCIA & HIMEL, LTD.
                           650 North Dearborn Street
15                         Suite 700
                           Chicago, Illinois  60654
16                         BY:  MR. ROBERT LOUIS RASCIA

17 ALSO PRESENT:          Ms. Tiffany A. Minarik
                           Pretrial Services
18

19          PAMELA S. WARREN, CSR, RPR
               Official Court Reporter
20          219 South Dearborn Street
                    Room 2342
21          Chicago, Illinois  60604
                 (312) 408-5100
22 **NOTE:  Please notify of correct speaker identification.**
   **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
23 **UNINTELLIGIBLE.**

24

25

1          (Proceedings held in open court:)
2              THE CLERK:  United States of America versus Gabriel
3   Rosas for detention hearing and status on the prelim.
4              THE COURT:  Good afternoon.
5              MR. DUNNE:  Good afternoon, Judge.  Assistant United
6   States Attorney Bill Dunne, D-u-n-n-e, on behalf of the United
7   States.
8              MR. RASCIA:  Good afternoon, your Honor.  Robert
9   Rascia for Mr. Rosas.
10             THE COURT:  Okay.  And for pretrial services?
11             MS. MINARIK:  Good afternoon, your Honor.  Tiffany
12  Minarik on behalf of pretrial services.
13             THE COURT:  Okay.  Mr. Rosas is also present in court
14  as well.
15             Mr. Rosas, you're in a wheelchair.  You could stay in
16  that wheelchair if you want.  Is that okay?  That comfortable
17  for you?
18             THE DEFENDANT:  Yes.
19             THE COURT:  Okay.  We're here on -- for a detention
20  hearing and a deferred decision on the preliminary exam.  When
21  we were last here, Mr. Rosas was going for a fitness for
22  confinement exam.
23             Can somebody update me on where he has been?
24             MR. RASCIA:  Judge, apparently the same day we were in
25  court, later that -- in the early evening Mr. Rosas was taken

1  to Thorek Hospital.
2  　　　　I received back from AUSA Storino a form that
3  was -- it is entitled arrestee medical clearance report.  It is
4  a Chicago Police Department lockup form.  And there is places
5  on this form to insert a variety of information.
6  　　　　The medical professional who apparently was tendered
7  this form didn't bother to fill any of it in.  But there is a
8  signature on it, there is a date, and a time, which is -- looks
9  to be 10:50 P.M.  And all it says on there is patient cleared.
10 　　　　I did have an opportunity to talk to Mr. Rosas.  His
11 visit to the hospital lasted a matter of minutes.  The medical
12 professional who he spoke to asked him a series of questions
13 about how he was feeling at the moment as -- didn't really ask
14 him any questions about his prior medical history.  No tests
15 were administered.  No vitals were taken.  No blood was drawn.
16 No x-rays taken.  Nothing.  So I -- quite frankly I don't think
17 this tells us really anything.  And I talked about that with
18 Mr. Storino.
19 　　　　What we did learn that -- subsequent to that the
20 Metropolitan Correctional Center had scheduled a doctor visit
21 for Mr. Rosas where they were going to do a full examination to
22 determine the extent of what his condition was and what
23 possible treatment he needed.
24 　　　　That didn't go forward because Mr. Rosas had an
25 accident while in his room at the MCC.  He fell out of the

1  upper bunk and was injured.  They had to take him to the
2  hospital to treat that situation, and, therefore, he didn't see
3  the doctor yesterday.
4          THE COURT:  What was the nature of that injury,
5  Mr. Rosas?  Or I'm sorry --
6          MR. RASCIA:  I'm sorry?
7          THE COURT:  What was the nature of that injury that he
8  suffered when he fell out of the bunk?
9          MR. RASCIA:  Judge, he fell, and he landed on his
10 back.  He had some bruising.  He had some great discomfort over
11 that.  I don't think it is a permanent type of injury.  But to
12 be safe, they took him to get examined to make sure whether or
13 not he broke a bone or anything of that nature.
14         He's in the wheelchair because he is feeling weak and
15 nobody wants to see him fall again and have another accident.
16 My -- I'm not totally exactly when (sic) he is going to get a
17 medical examination.
18         But moving further along, I did receive a pretrial
19 services report this afternoon when I returned from my morning
20 court call.  I talked to Mr. Dunne.  There is some information
21 that we need to supplement in order to move this forward to a
22 hearing.
23         For example, I need to put a member of Mr. Rosas's
24 family in touch with pretrial services so they could verify
25 that he has a place to live if he is released, what the

1  conditions are in which he'll be living, and things of that
2  nature, which they don't currently have.
3  　　　　　I have also been working since last week to try to
4  gather documents that Mr. Rosas had in his possession at the
5  time of his arrest relating to the treatment he has already
6  had.  Because short of that, just getting him to sign a consent
7  and providing it to the service provider, they're not going to
8  just immediately turn over the records to me.  That will take
9  some time.  So I was hoping to just get whatever documents he
10 had and move forward from there, in conjunction with the
11 examination that I think these marshals are going to take him
12 for.
13 　　　　　So moving forward I have discussed with Mr. Dunne the
14 possibility of seeing you Friday afternoon to have an
15 opportunity to put somebody from Mr. Rosas's family in touch
16 with pretrial and also get that person to come to court.
17 　　　　　I have talked to someone, as I was coming over to
18 court this afternoon, they're agreeable to do that.  I just
19 want to make sure it is the appropriate candidate.
20 　　　　　In regards to the preliminary examination, I did tell
21 Mr. Dunne that we would be waiving the preliminary examination.
22 　　　　　So if you could accommodate us some time on Friday
23 afternoon, maybe right after lunch, that would be terrific.  I
24 have a hearing out in McHenry (unintelligible) -- McHenry
25 County courthouse at 9:00 o'clock.  That will probably be over

1  with by 9:45.
2          I just didn't want to schedule it and then worry about
3  getting here.  But I know I'll be back downtown probably by at
4  least 11:00 or 11:30.
5          THE COURT:  Yeah, I have a brief bench trial in the
6  morning on damages in a civil case, so I can't do the morning.
7          I can do 2:00 o'clock P.M., which should be plenty of
8  time to deal with these issues.  And if Mr. Rosas is going to
9  be released, to get him processed through the marshal service
10 if that's where we end up going.
11         So I would say 2:00 P.M. on Friday, the 4th.
12         MR. RASCIA:  One last thing.  I did talk to Mr. Dunne.
13 If we run into any difficulty trying to get this together for
14 Thursday, it was our intention to communicate with you on
15 Thursday to let you know so that the defendant wasn't brought
16 over to court unnecessarily.
17         THE COURT:  That would be great.  And on -- I could
18 tell you on -- I mean, Monday, March 7th is Pulaski Day, which
19 we all know is a famous Illinois holiday for Casimir Pulaski.
20         MR. RASCIA:  I'm proud to say, Judge, finally, about a
21 year ago, I actually decided to do some research to find out
22 who that person really was and what their claim to fame was.
23         THE COURT:  Well, NPR, they're running stories on
24 this.  He was apparently a very handsome, swashbuckling officer
25 in the -- during the revolution, I guess, and came over here

```
 1  to -- he was a revolutionary war hero --
 2          MR. RASCIA:  My recollection --
 3          THE COURT:  -- or was it civil?
 4          MR. RASCIA:  -- is he had something to do with the
 5  creation of maps.
 6          THE COURT:  Okay.  Well, when I was practicing -- I
 7  always loved this, Mr. Rosas, I always loved when, you know,
 8  people would call -- I had cases all around the country, and
 9  people would -- I would be on the phone and say happy holiday
10  today.  What holiday is it?  It is Casimir Pulaski Day.
11          Anyway, that's a long way of saying I could do it on
12  Monday too because a lot of the people who -- you know,
13  Illinois state and city offices are closed.  So I can't get the
14  city over here.  I can't get the state over here.  So I
15  have -- and I have -- I have time on --
16          MR. RASCIA:  Judge, my only reason for requesting
17  Friday is trying to be respectful to Mr. Rosas's --
18          THE COURT:  Yeah, no, I think we ought to --
19          MR. RASCIA:  -- condition.
20          THE COURT:  Absolutely.
21          MR. RASCIA:  If I can get him in a better situation
22  quicker, I would feel more comfortable with that --
23          THE COURT:  I --
24          MR. RASCIA:  -- if it is possible.
25          THE COURT:  Yeah.  I mean, I think we ought to shoot
```

```
 1   for Friday at 2:00.  If that doesn't work because you can't get
 2   your ducks in a row by then, call Brenda so, hopefully, they
 3   won't bring Mr. Rosas over here so he has to sit all day and be
 4   uncomfortable.  And if that day doesn't work, call her to
 5   reschedule.  All right?
 6            There were a couple things that I -- you know, I -- in
 7   addition to what pretrial services noted here with respect to
 8   residence and the need to confirm verified background
 9   information and proposed residence, which I know you are
10   latched onto and you're going to do, the more you could do to
11   circle in on Mr. Rosas's diagnosis and what kind of medical
12   treatment he needs -- I mean what -- it notes here, self-
13   reported, is that he needs chemotherapy every three months at
14   Silver Cross Hospital.  So I see that.  But the more
15   information you could provide on that would be good.
16            And there was a concern I had, and I understand it,
17   that Mr. Rosas reports that he smokes marijuana three times a
18   day for pain management purposes.  I don't know if that's on a
19   physician's approval prescription or not.  But if it is not,
20   unfortunately, it could be a felony.
21            And so one thing you might want -- I mean, one thing
22   you may want to be addressing is whether this is with or
23   without doctor approval or prescription because -- I mean,
24   that -- that, you know --
25            MR. RASCIA:  Well --
```

1         THE COURT: One of the things -- one of the -- one of
2  the -- if we are going to go down the road of release, and I
3  don't know if we are or not, but pretrial services recommends a
4  condition being refrain from use or unlawful possession of a
5  narcotic drug or other controlled substance unless prescribed
6  by a doctor. So that could be a violation of the terms of
7  release.
8         MR. RASCIA: Well, Judge, I'm not trying to trivial --
9  trivialize the use of an illicit substance, but in most
10 municipalities now the mere use would only be a petty offense.
11 But --
12        THE COURT: But not in Chicago, right?
13        MR. RASCIA: -- a violation of the law nonetheless.
14        THE COURT: Well, I mean, we have a -- I mean, A,
15 not in Chicago; and, B, federal law has not caught up with
16 Colorado, Washington, and other states, as you know. And
17 that's -- you know, federal law still makes possession of
18 cannabis at a particular level a felony. So -- and if he is
19 going to be released, it would be on condition that he commit
20 no felonies.
21        MR. RASCIA: Well, and that's one of the reasons why I
22 want to get the other -- the person who he is going to live
23 with here so that any conditions that are set are made aware of
24 who he is living with so there is no issues with any of those
25 types of things.

1          THE COURT:  And I'll ask you the next time you're here
2   if you have corrections to this.
3          Mr. Dunne, is it still the government's position,
4   notwithstanding pretrial services's recommendations, that there
5   are some conditions that could be imposed; namely, home
6   incarceration with electronic monitoring with a host of other
7   conditions?  Is the government's position still that Mr. Rosas
8   should be held in custody while these charges are continuing to
9   progress?
10         MR. DUNNE:  Yes, sir.
11         THE COURT:  Based on danger?
12         MR. DUNNE:  Based --
13         THE COURT:  And risk of flight or just danger?
14         MR. DUNNE:  On both, your Honor.
15         THE COURT:  Yeah.  I did note that without a passport
16  Mr. Rosas, it says, that he was able to get in and out of
17  Mexico three times last year.
18         Okay.  Well, the bottom line is, first, Mr. Rosas,
19  your counsel has said we're going to waive the preliminary --
20  you're going to waive the preliminary hearing, meaning we're
21  not going to have an evidentiary hearing to determine if there
22  is probable cause to believe a crime was committed and you
23  committed it.  So I would hold you over to answer for those
24  charges here in the district court.
25         That's okay with you?

1 THE DEFENDANT: Yes.

2 THE COURT: Okay. Two, I'll continue your detention
3 hearing until March 4th at 2:00 P.M. or such other time as you
4 guys tell me you -- you want to do it.

5 And once you have been in contact with family members,
6 you need to talk to pretrial services so that they can be clear
7 whoever you're talking about as a third-party custodian.

8 Right, Mr. Rascia?

9 MR. RASCIA: Yes, Judge.

10 THE COURT: And then you'll address any of the other
11 issues in here that you can, and we will have a hearing.

12 MR. RASCIA: Thank you, Judge.

13 THE COURT: Okay. Thank you. Bye.

14 MR. DUNNE: Thank you, your Honor.

15 (Which concluded the proceedings.)

16 CERTIFICATE

17 I certify that the foregoing is a correct transcript
18 from the digital recording of proceedings in the above-entitled
19 matter to the best of my ability, given the limitation of using
20 a digital-recording system.

21

22

23 */s/Pamela S. Warren*  July 5, 2018
Official Court Reporter                    Date
24 United States District Court
Northern District of Illinois
25 Eastern Division