```
 1  TRANSCRIBED FROM DIGITAL RECORDING

 2              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 3                       EASTERN DIVISION

 4  UNITED STATES OF AMERICA,         )
                                      )
 5           Plaintiff,               )
                                      )
 6      vs.                           ) No. 16 CR 107-1
                                      )
 7  GABRIEL ROSAS, also known as Gabe,) Chicago, Illinois
                                      ) March 7, 2016
 8           Defendant.               ) 12:10 P.M.

 9    TRANSCRIPT OF PROCEEDINGS - Detention Hearing (Continued)
      BEFORE THE HONORABLE JEFFREY T. GILBERT, Magistrate Judge
10
    APPEARANCES:
11
    For the Government:       HON. ZACHARY FARDON
12                             219 South Dearborn Street
                               Chicago, Illinois  60604
13                         BY: MR. WILLIAM DUNNE

14  For the Defendant:         RASCIA & HIMEL, LTD.
                               650 North Dearborn Street
15                             Suite 700
                               Chicago, Illinois  60654
16                         BY: MR. ROBERT LOUIS RASCIA

17  ALSO PRESENT:              Mr. Victor N. Alvarez
                               Pretrial Services
18

19             PAMELA S. WARREN, CSR, RPR
                  Official Court Reporter
20             219 South Dearborn Street
                        Room 2342
21             Chicago, Illinois  60604
                     (312) 408-5100
22  NOTE:  Please notify of correct speaker identification.
    FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS
23  UNINTELLIGIBLE.

24

25
```

```
 1            (Proceedings held in open court:)
 2            THE CLERK:  16 CR 107, United States of America versus
 3   Rosas for continued detention hearing.
 4            THE COURT:  Good afternoon.
 5            MR. RASCIA:  Good afternoon, your Honor.  Robert
 6   Rascia for Mr. Rosas, who is present.
 7            MR. DUNNE:  Good afternoon, Judge.  Assistant United
 8   States Attorney Bill Dunne, D-u-n-n-e, on behalf of the United
 9   States.
10            THE COURT:  Okay.  Good afternoon both counsel.
11            Good afternoon, Mr. Rosas.
12            And we have from pretrial services here?
13            MR. ALVAREZ:  Hello, your Honor.  Victor Alvarez from
14   pretrial.
15            THE COURT:  This is a continued detention hearing for
16   Mr. Rosas.  We recessed to allow you to get some more
17   information.
18            What's the story?
19            MR. RASCIA:  Judge, I made attempts to try to gather
20   any documents that Mr. Rosas had in his personal possession,
21   but that didn't turn out to be fruitful.
22            So we took the next step and at least communicated
23   with the provider of his medical care, which was through Silver
24   Cross Hospital.  And I spoke to people at Silver Cross.  They
25   forwarded to me an authorization form for Mr. Rosas's
```

1  signature, which we had him execute.  We sent back to their
2  medical records department, along with the check they
3  requested, for the release of the records.  That was all done
4  over the weekend.
5      And we -- my assistant communicated with them today.
6  They indicated that they would get the records out as quickly
7  as they could.
8      I also learned a few moments ago, through the courtesy
9  of the marshal informing me, that Mr. Rosas has an appointment
10 tomorrow at Rush Medical Center for an examination which had
11 been delayed because he got injured the day he was supposed to
12 go --
13     THE COURT:  This is the shoulder?
14     MR. RASCIA:  Right.
15     But now he's going tomorrow for a full medical
16 examination.
17     Judge, I know that the Court would like as much
18 information about Mr. Rosas as possible.  And I am doing the
19 best I can to gather that information.  I would hope to have it
20 hopefully by the end of this week.
21     I'm not a hundred percent sure if that's going to
22 happen.  I can't control -- we did offer to actually go pick up
23 the records at the facility in Joliet as soon as they're ready
24 so we don't have to wait for them to be sent.
25     So, most respectfully, I know Mr. Rosas is anxious to

1  have some conclusion to this hearing, but I have expressed to
2  him that I think it's in his best interests to give the Court
3  as much information as possible.
4       So, respectfully, Judge, I would ask if perhaps we
5  could see you next -- this coming Friday, which would be the
6  11th or perhaps on Monday, the 14th.
7       THE COURT:  Well, I could schedule you for the 11th,
8  tentatively, to see whether or not you have got everything
9  together.
10      The 14th I'm going to be out of town for a little
11 bit.  So if we can't do it by the end of this week, then it
12 would probably be in front of the duty magistrate judge.  But
13 I --
14      MR. RASCIA:  Could I just grab my calendar?
15      THE COURT:  Yes.
16      But I've reviewed everything again, and I -- I wanted
17 to hear from Mr. Alvarez a little bit too maybe because when
18 we -- the pretrial services report said that their
19 recommendation was contingent upon completion of verification
20 of the defendant's background information and proposed
21 residence.
22      So I'm wondering whether you or Mr. Bonestroo or
23 anybody -- I never know how to pronounce his name.  Is it
24 Bonestroo?
25      MR. ALVAREZ:  That's good enough, your Honor.

1    THE COURT:  No, no, tell me the right way because I
2    always -- I never say it because I don't know it.
3    What's -- how do you pronounce it?
4    MR. ALVAREZ:  I believe he says it is Bonestroo.
5    THE COURT:  Bonestroo.  Yeah, he kind of drops his
6    voice, and I have never -- okay.  I mean, he's kind of new-ish,
7    so -- anyway, did somebody verify background information and
8    proposed residence with Mr. Rosas's sister?
9    MR. ALVAREZ:  What Mr. Bonestroo told me, your Honor,
10   is we have no contact information, so we're not able to verify.
11   But not so much -- our recommendation is not so much contingent
12   upon the verification than it is where would he -- where is he
13   going to live, who would he live with?  That's what we're more
14   interested in here.  So as soon as we can speak with someone,
15   we more or less go toward (unintelligible) recommendation.
16   THE COURT:  Okay.  Well, the -- so can we tie that up,
17   Mr. Rascia?  Because the pretrial services report indicates, as
18   far as I can tell from reading it, that Mr. Rosas has been
19   living since 2011 with his sister.
20   Right, Mr. Rosas?
21   THE DEFENDANT:  Yes, sir.
22   THE COURT:  In Joliet.
23   And when and if we get to the point of dealing with
24   this, pretrial services needs to talk to her and needs to
25   understand the living situation, needs to do a background check

6

on her. Because the proposal is to live there on a -- you know, a home incarceration kind of arrangement.

    So if you could try and get that information to pretrial services, that would advance the process.

    MR. RASCIA: Judge, there is -- there are two --

    THE COURT: Unless you're not talking about him living there.

    MR. RASCIA: Judge, there are two candidates. One is his sister. The other one is a young lady he has been in a social relationship with. Both of which have told me they are willing to come to court at the appropriate time.

    I will provide their names, phone numbers, and addresses later today to pretrial so they could communicate with them and get whatever information they need from them.

    The only issue regarding where he would stay was somewhat linked to the urgency of medical treatment. If he lives with his sister, it will be closer to where he gets his treatment.

    THE COURT: Okay. At Silver Cross, the chemo, you're talking about?

    MR. RASCIA: Yes.

  (Brief interruption.)

    THE COURT: Did you get any information one way or the other of how a person with no passport can travel to and from Mexico from the U.S.? I'm just not aware of that. I mean,

1  I -- I don't know that you need a passport to leave.  I think
2  coming in could be an issue.  Have you gotten any information
3  on that or not?
4          MR. RASCIA:  Judge, I have gotten information about
5  that.  Respectfully, Judge, I'll relay that to the Court at the
6  appropriate time.
7          THE COURT:  Okay.  I just want to make sure that I'm
8  kind of flagging issues for you guys to address because, as I
9  said, if I am -- if I am not here and -- if we do it on Friday,
10 great.  I did note that since Mr. Rosas has been -- was
11 released to (unintelligible) in December of 2011, and after his
12 cancer diagnosis in 2012, the only law enforcement issue that
13 he had was in December of 2013, and that was nolle pros'd
14 on -- in 2014.  So I did see that.
15         Okay.  Do you want to look at Friday?
16         MR. RASCIA:  Friday --
17     (Discussion off the record.)
18         MR. RASCIA:  Judge, and I have an appearance that's
19 required in Circuit Court in Kane County to get a ruling from a
20 motion that was previously litigated.  I'll be back downtown,
21 should be by noon.  So any time in the early afternoon that
22 might be convenient for you.
23         THE COURT:  Okay.  I heard you guys whispering about
24 2:00.  I could do 2:00.  I could do 1:30.
25         MR. DUNNE:  Whatever is convenient for the Court.

1         THE COURT: Okay.

2         MR. RASCIA: Judge, to be safe, why don't we go with
3 2:00.

4         THE COURT: 2:00 o'clock. Is that okay with you,
5 Mr. Alvarez or Mr. Bonestroo or somebody?

6         MR. ALVAREZ: Yes, we'll be here.

7         THE COURT: Okay. And if you get information from
8 Mr. Rascia about the people with whom Mr. Rosas is proposed to
9 live, will you supplement your report?

10        MR. ALVAREZ: We will.

11        THE COURT: Mr. -- just for my information, Mr. Dunne,
12 as I'm preparing -- because I went through all this stuff
13 again. I'm sorry to keep you here.

14        MR. DUNNE: You're not. You're not, Judge.

15        THE COURT: Is this a -- from the government's point
16 of view, is this a presumption case or not a presumption case?
17 It looks like on the gun charge he's facing a maximum ten
18 years, and on the -- I think the drug charge, a maximum 20
19 years, putting aside whether he can rebut the presumption. But
20 I was just wondering that -- how that works in the balance as
21 I'm thinking about it.

22        MR. DUNNE: Judge, my understanding, and I will verify
23 before -- I will verify it again before we appear before you
24 Friday, is that there is a presumption without -- with regard
25 to the narcotics charge.

```
 1              THE COURT:  Do you disagree or agree, Mr. Rascia?  Or
 2   you're going to be looking at that?
 3              MR. RASCIA:  Well, the way the case is charged, Judge,
 4   the possible sentence is zero to 20 years, so --
 5              THE COURT:  So it is a maximum of 20.  You hit that
 6   category.
 7              MR. RASCIA:  Well, because ten years is within the
 8   range, so the government is going to assert that.  I think
 9   legally they can.
10              But for whatever it is worth today, the amount of
11   drugs involved in this case I think is approximately an ounce
12   of cocaine.  Not the usual type of case where the presumption
13   would be sought.
14              THE COURT:  Well, I mean, the presumption would exist.
15   It is not the usual type of case in which you see a presumption
16   is what you are saying.
17              MR. RASCIA:  Right.
18              THE COURT:  Kilos and kilos of drugs over time.  Okay.
19   All right.  Anything else from you guys?
20              MR. RASCIA:  No, Judge.  Thank you.
21              THE COURT:  All right.  Good luck in your appointment
22   tomorrow at Rush.  I hope that they can address your shoulder,
23   and we'll see --
24              THE DEFENDANT:  It is my spine.
25              THE COURT:  Your spine.  Okay.
```

1      And we'll see you at the end of the week.

2      Counsel, if you know before Friday that you don't have

3 the information that you need, will you let Brenda know?

4      MR. RASCIA:  I certainly will.

5      THE COURT:  And then if I am back when you're ready, I

6 would be happy to do that.  If you want a hearing before then

7 though, I think technically the -- it is up to you.  But I

8 think that technically it would go to the duty magistrate

9 judge.

10      MR. RASCIA:  I'll communicate with Mr. Dunne and with

11 Brenda, your Honor.

12      THE COURT:  I mean, I'm happy to do -- you know, to do

13 this if I am here.

14      MR. RASCIA:  Thank you.

15      THE COURT:  Okay.

16   (Which concluded the proceedings:)

17                         CERTIFICATE

18      I certify that the foregoing is a correct transcript
from the digital recording of proceedings in the above-entitled
19 matter to the best of my ability, given the limitation of using
a digital-recording system.

20

21 */s/Pamela S. Warren*                        July 3, 2018
Official Court Reporter                       Date
22 United States District Court
Northern District of Illinois
23 Eastern Division

24

25