1   **TRANSCRIBED FROM DIGITAL RECORDING**

2                  IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
3                          EASTERN DIVISION

4   UNITED STATES OF AMERICA,              )
                                           )
5                  Plaintiff,              )
                                           )
6            vs.                           )  No. 16 CR 107-1
                                           )
7   GABRIEL ROSAS, also known as Gabe,     )  Chicago, Illinois
                                           )  March 29, 2016
8            Defendant.                    )  1:40 P.M.

9       TRANSCRIPT OF PROCEEDINGS - Detention Hearing (Continued)
         BEFORE THE HONORABLE JEFFREY T. GILBERT, Magistrate Judge
10
    APPEARANCES:
11
    For the Government:        HON. ZACHARY FARDON
12                             219 South Dearborn Street
                               Chicago, Illinois  60604
13                             BY:  MR. TIMOTHY JOSEPH STORINO
                                    MR. WILLIAM DUNNE
14
    For the Defendant:         RASCIA & HIMEL, LTD.
15                             650 North Dearborn Street
                               Suite 700
16                             Chicago, Illinois  60654
                               BY:  MR. TIMOTHY LIAM KELLY
17
    ALSO PRESENT:              Mr. Matthew Bonestroo
18                             Pretrial Services

19
                       PAMELA S. WARREN, CSR, RPR
20                       Official Court Reporter
                         219 South Dearborn Street
21                             Room 2342
                         Chicago, Illinois   60604
22                          (312) 408-5100

23  **NOTE:  Please notify of correct speaker identification.**
    **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
24  **UNINTELLIGIBLE.**

25

(Proceedings held in open court:)

THE CLERK:  16 CR 107 dash 1, United States of America versus Gabriel Rosas, for continued detention hearing.

THE COURT:  Good afternoon, Mr. Rosas.

THE DEFENDANT:  Good afternoon, your Honor.

THE COURT:  Sorry for the delay.

MR. KELLY:  Good afternoon, your Honor.  For the record my name is Liam Kelly.  That's spelled L-i-a-m, K-e-l-l-y.  I'm from the Law Offices of Robert Rascia on behalf of Gabrial Rosas.

THE COURT:  Good afternoon.

MR. STORINO:  Timothy Storino and William Dunne on behalf of the United States, your Honor.

THE COURT:  Okay.  Good afternoon to you too.

We're here for a continued detention hearing for Mr. Rosas.  But I understand from Brenda that she got a call either from somebody saying that they're wanting to continue this.

MR. KELLY:  Yes, your Honor.  I made the phone call.  Mr. Rosas's continued detention hearing, one of the factual elements that will be most at issue for your Honor to decide will be his medical -- we anticipate it would be his medical needs going forward.  We had requested medical records.  The delay in receiving them up till now is attributable to the medical provider wanting their own forms,

as they do from time to time. And we received those
yesterday. But we didn't receive them till very late in the
day, almost at the close of the business day yesterday.

So we do have the medical records. I have seen them.
I have not had a chance to review them. Mr. Rascia has not had
a chance to review them. And he is not in town this week and
won't be for the remainder of the week.

THE COURT: Uh-huh.

MR. KELLY: So -- they are voluminous. I have seen
them. They are, I would guess, perhaps as much as a thousand
pages. Although I could be wrong about that. They are
consistent with a significant amount of medical treatment.

THE COURT: Well, the last time -- I mean, I -- I'll
give you whatever time you want. The last time Mr. Rascia was
here, which was on the 11th, he told me that he had been
informed by Silver Cross Hospital that the records were
available that day, he just hadn't had a chance to go out and
get them. And so that was more than two weeks ago.

Are these other records or do you have any idea about
any of this? You're standing in for him.

MR. KELLY: I am. So it is possible that there is
some -- some information I'm not -- I don't have, but I -- I
understand that these are the records that we were waiting for.

It -- having dealt with medical records departments
before, sometimes they tell you they are available and then

1  they don't -- and then you show up, and they tell you that you

2  need a particular form.

3     MR. KELLY:  Okay.

4     THE COURT:  Okay.

5     MR. KELLY:  But we do have them though.  They are in

6  our possession now.

7     THE COURT:  Well, certainly if you want more time to

8  review them and get -- glean the information that you need, I'm

9  not going to stop you.  I mean, the question is when should I

10  reschedule -- reset this for.

11     I -- let me also tell you -- did you have a chance to

12  review -- or maybe you're not at this -- that level of depth --

13  the government filed yesterday their memorandum in support of

14  Mr. Rosas's continued detention.

15     MR. KELLY:  I was aware that it had been filed and

16  that is one thing that we additionally would seek time to

17  review, although not much time.  Mr. Rascia suggested next

18  Tuesday for the hearing.

19     THE COURT:  Okay.  Do you want to file something in

20  writing in response to this?

21     MR. KELLY:  I anticipate that the answer to that will

22  be -- would be no.  He didn't indicate that he intended to.

23     THE COURT:  Okay.  Well, I'm going to say if you get

24  -- if you intend to file something, you should file it by

25  Monday, if we're going to do this on Tuesday.

1    MR. KELLY:  Understood.

2    THE COURT:  Tuesday, the 5th.

3    Oh, man, that is a crazy day.

4    (Brief interruption.)

5    THE COURT:  I'm going to say 1:00 o'clock.

6    Does that work for you guys?

7    MR. STORINO:  That works for the government.

8    MR. DUNNE:  Whatever time is convenient for the Court,

9    Judge.

10   THE COURT:  Let's push -- we're going to have to push

11   Whitehead back a little bit.

12   THE CLERK:  1:45 or 2:00?

13   THE COURT:  Yeah, I don't know.  Yeah.

14   THE CLERK:  Okay.

15   (Brief interruption.)

16   THE COURT:  I do want to say one thing to guide

17   your -- I looked at what the government filed, and I reviewed

18   my notes on this.  And I know you're going to be looking at the

19   medical records.  I'll tell you that, in addition to a

20   diagnosis of Mr. Rosas and, you know, a confirmation of a

21   particular diagnosis and a prognosis, okay, one of the other

22   things that I would be interested in hearing is the treatment

23   regimen that Mr. Rosas is under and whether or not he can be

24   treated adequately in custody.

25   You know, one of the mitigating factors that even the

government recognizes in its submission is Mr. Rosas's medical
condition.  And so the question that I would have is if he were
continued to be remanded to the custody of the United States
Marshal, can he receive in custody the treatment that he needs
to receive for his medical condition.  Or is that only
treatment that can be obtained outside?

Okay.  In addition to all the other things that
Mr. Rascia has been -- and I guess you're standing in, so
I -- you know, he has had other issues about where he would
live and other kinds of things.  One of the things that I am
focused on is given Mr. Rosas's medical condition, how
difficult would it be and can he be -- receive the treatment he
needs in custody.

MR. KELLY:  Understood.

THE COURT:  So I would relay that to Mr. Rascia.  And
look at that while you're going through the medical records or
consulting with medical providers.

MR. KELLY:  Understood, your Honor.  And I can
represent at this point that it would be Mr. Rascia's position
that due to unique circumstances he won't be able to receive
the treatment --

THE COURT:  Okay.  But I -- but if that's going to be
his argument, I need some specifics on that.

MR. KELLY:  Certainly.  I'll indicate that.

THE COURT:  I mean, I think at one point in these

1   proceedings I was told, Mr. Rosas, that you were receiving

2   treatment every three months.  Right?

3           THE DEFENDANT:  Yes.

4           THE COURT:  I think it was chemo every three months,

5   right?

6           THE DEFENDANT:  Yes.

7           THE COURT:  And where are you -- I don't -- so what I

8   would be interested in is rather than -- because that has

9   already been said of public record.  But what I would be

10  interested in is when is the next treatment and where are we on

11  that continuum, et cetera.

12          MR. KELLY:  Yes, your Honor.

13          THE COURT:  Okay.  And as I said, if you are going to

14  respond in writing to what the government submitted, I would

15  like to see that Monday so that we -- I could have it by

16  Tuesday.  Okay?

17          Also what I would ask, and I think for Mr. Rosas's

18  convenience too, is if you know like on Monday on or on Friday

19  that you're still not going to be able to have garnered all the

20  information you'd want to have garnered by Tuesday, will you

21  please let the folks at the U.S. Attorneys know, let Brenda

22  know, so that they don't have to pull Mr. Rosas over here for a

23  hearing that will not take place?

24          MR. KELLY:  Yes, your Honor.

25          THE COURT:  Okay.  Because he's in a wheelchair.  I'm

1    sure the transportation is difficult.

2         And I'm sure they wake you up pretty early in the

3    morning to bring you over here for a hearing in the afternoon.

4         So if you need more time, I'm not going to object to

5    it, but try and let us know so that we can tell the marshals

6    about it so that they don't roust him out of bed early in the

7    morning to come over here just to have this hearing continued.

8         MR. KELLY:  Yes, your Honor.

9         THE COURT:  Okay?

10        THE DEFENDANT:  Your Honor, could I say something?

11        THE COURT:  First I would talk to your lawyer before

12   you say something.

13        (Discussion off the record.)

14        THE DEFENDANT:  Never mind.  Sorry.

15        THE COURT:  That's okay.

16        Anything further?

17        MR. STORINO:  Not from the government, your Honor.

18        MR. KELLY:  None, your Honor.

19        THE COURT:  I'll continue the hearing until April 5th

20   at 1:00 P.M.  And if you need a different date, just let Brenda

21   know.

22        MR. STORINO:  Thank you, your Honor.

23        THE COURT:  Okay.

24        (Which concluded the proceedings.)

25

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitation of using a digital-recording system.


*/s/ Pamela S. Warren*                    July 5, 2018
Official Court Reporter                    Date
United States District Court
Northern District of Illinois
Eastern Division