1  **TRANSCRIBED FROM DIGITAL RECORDING**

2              IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
3                     EASTERN DIVISION

4  UNITED STATES OF AMERICA,              )
                                          )
5              Plaintiff,                 )
                                          )
6              vs.                        )  No. 16 CR 107-1
                                          )
7  GABRIEL ROSAS, also known as Gabe,     )  Chicago, Illinois
                                          )  April 8, 2016
8              Defendant.                 )  9:40 A.M.

9     TRANSCRIPT OF PROCEEDINGS - Detention Hearing (Continued)
      BEFORE THE HONORABLE JEFFREY T. GILBERT, Magistrate Judge
10
    APPEARANCES:
11
    For the Government:       HON. ZACHARY FARDON
12                            219 South Dearborn Street
                              Chicago, Illinois  60604
13                            BY:  MR. TIMOTHY JOSEPH STORINO
                                   MR. WILLIAM DUNNE
14
    For the Defendant:        RASCIA & HIMEL, LTD.
15                            650 North Dearborn Street
                              Suite 700
16                            Chicago, Illinois  60654
                              BY:  MR. ROBERT LOUIS RASCIA
17

18  ALSO PRESENT:             Mr. Justin L. Wiersema
                              Pretrial Services
19

20                    PAMELA S. WARREN, CSR, RPR
                         Official Court Reporter
21                      219 South Dearborn Street
                              Room 2342
22                    Chicago, Illinois   60604
                          (312) 408-5100
23
    **NOTE:  Please notify of correct speaker identification.**
24  **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
    **UNINTELLIGIBLE.**
25

1    (Proceedings held in open court:)

2         THE CLERK:  16 CR 107, dash 1, United States of

3    America versus Gabriel Rosas, for continued detention hearing.

4         MR. STORINO:  Good morning, your Honor.  Timothy

5    Storino and William Dunne on behalf of the United States.

6         THE COURT:  Good morning.

7         MR. RASCIA:  Good morning, your Honor.  Robert Rascia

8    for Mr. Rosas, who is present.

9         THE COURT:  All right.

10        MR. WIERSEMA:  Good morning, Judge.  Justin Wiersema

11   standing in for Matthew Bonestroo on behalf of pretrial

12   services.

13        THE COURT:  Right.  Okay.  Good morning to everybody.

14        Good morning, Mr. Rosas.

15        I assume everybody received or counsel received the

16   addendum from pretrial services reporting their interview with

17   Ms. Silerio's mom.

18        MR. RASCIA:  Yes.

19        THE COURT:  Government?

20        MR. STORINO:  Yes.

21        THE COURT:  Okay.  We had an extensive discussion last

22   time.  The case was up earlier this week, so you should assume

23   I remember everything that you said and have continued to think

24   about it.

25        One of the things we recessed on was to give the

1  government a chance to look at the medical records or the

2  selection of medical records that Mr. Rascia produced at the

3  last hearing.

4       Mr. Storino, have you or Mr. Dunne had an opportunity

5  to do that?  And is there anything you want to add to anything

6  you said last time either about those records or anything else

7  before we go into the decision on the motion?

8       MR. STORINO:  Your Honor, we have received the medical

9  records that counsel gave us.  I understand that they are

10  through approximately 2013.  So obviously for the past three

11  years we don't have any medical records.  And I understand that

12  defense counsel received records through about 2014 from the

13  hospital.

14       Your Honor, we continually moved the hearing in order

15  to get these records because Mr. Rosas was representing to the

16  Court that he was ill.  And before your Honor went on vacation,

17  we nearly had the hearing right there based on just the

18  representation in the pretrial services report from

19  Mr. Rosas.  And, frankly, your Honor, the medical records

20  contradict almost everything Mr. Rosas has been telling both

21  this Court and the district court.

22       According to the medical records, his cancer has been

23  in remission for three years, since August of 2013.  And the

24  government reached out to the MCC because Mr. Rosas had both in

25  this Court and before the district court been claiming that he

was not receiving medical treatment at the MCC and was being

ignored.  And so we called the MCC and said, can you advise the

Court in a letter as to the medical treatment he's receiving?

And they did that in two pages.  And they again confirmed that

his cancer is in remission.

And so, your Honor, the main thrust of my

understanding of the defense's argument as to why Mr. Rosas

should be released was because he was sick.  Now cancer in

remission is still serious, but it is very clear that his

cancer has been in remission several years and that he can be

treated and is being treated by the MCC.

Therefore, your Honor, I don't see that there is any

evidence that has been presented by the defense that would

rebut either his danger to the community or his risk of flight.

THE COURT:  Okay.  Thanks, Mr. Storino.

Mr. Rascia, do you want to respond to that?

MR. RASCIA:  Well, perhaps if Mr. Storino felt so

passionately about it he should have been here the other day

because you heard plenty of evidence.  You heard from a

witness.  The evidence has been presented.  Now it is for you

to decide whether that's adequate.

You know, unfortunately my client is not a person of

great stature in this community.  Some people who have that

great stature, their medical condition becomes the overriding

principle in this building as to whether or not they should be

released or treated a certain way.

THE COURT:  Well, if you are -- let me just interrupt you.  I mean, you are doing a lot of different like closing argument things, which is fine.  But, number one, it is not fair to criticize Mr. Storino for not being here for the earlier hearing.  Mr. Dunne is here, and Mr. Dunne is standing right beside him.  And I don't think anything that was said undercuts the point that Mr. Storino was saying.

Two, if you are referring to former Congressman Dennis Hastert, and his medical condition -- which seems to be a veiled reference in your statement, right?

MR. RASCIA:  I wasn't referring to anybody in particular.

THE COURT:  Okay.  Well, that's been in the news lately, and I think that's a completely different situation.  But I get the advocacy, okay?  But -- and I'm sorry for interrupting you.  But I think, you know, there are -- and that's with respect to Mr. Hastert's sentencing, not necessarily with respect to his pretrial confinement, which is a much different issue.

But I'm sorry for --

MR. RASCIA:  Well --

THE COURT:  I'm sorry for interrupting you.

MR. RASCIA:  -- that's all right, Judge.

THE COURT:  If you want to respond to what I just said

though, that's fine.

MR. RASCIA:  Yeah.  I guess I am a little confused about -- you know, we are here today because you indicated you were going to make a decision.

THE COURT:  Yes, I am.

MR. RASCIA:  And we get engaged in this constant volley back and forth.  In my opinion the ball is clearly in your hands for you to decide what to do here.

Obviously you could look at Mr. Rosas and you could see that his health is not in the optimum situation that a person would like it to be.

In regards to his risk of flight and danger to the community, we have talked about all those things.  We have presented to you what I think are reasonable conditions for his release.  I have nothing further to say about that.  I think that release is appropriate in this case, and we would ask you to release Mr. Rosas under the conditions that we presented earlier this week.

THE COURT:  Okay.  Thank you, Mr. Rascia.  And I'm sorry for jump -- I really apologize for jumping in on you.  I was getting this kind of testiness between counsel, and I wanted to see if I could stop it.

But I understand that this is a very serious issue.  And, frankly, some testiness may, you know, in a case like this, may very well be appropriate because you're both

1    zealously advocating the positions of your client.

2         Let me address myself to Mr. Rosas because I am

3    prepared to rule.

4         Now, Mr. Rosas, I thought about this a lot, and these

5    decisions -- you know, as I said to you last time, this is a --

6    this is not a guilt or innocence decision.  And for that

7    reason, judges in this building, including this Judge, find

8    these decisions about pretrial detention really tough decisions

9    because you are presumed innocent of all the charges in your

10   indictment -- that appear in your indictment unless and until

11   you're proven otherwise.

12        So, you know, people who go before a Judge for

13   sentencing, after they have either pled or been convicted after

14   a trial, the Judge is looking at someone who actually has been

15   convicted of a crime.

16        I'm looking at somebody who has not.  I'm looking at

17   somebody who is presumed innocent until he's proven otherwise,

18   who has got a very good lawyer and is going to cooperate with

19   that lawyer, you know, one would think, to contest these

20   charges.

21        On the other hand, one of the issues that I have to

22   consider is whether or not if you are released you're going to

23   continue to fight these charges or flee.  All right?  But these

24   are difficult decisions, and they are controlled by something

25   called the Bail Reform Act.  And the Bail Reform Act puts a

structure on my thought process here.

In your case -- in some cases the Bail Reform Act says that there is a presumption, meaning there is a weight on the scale that a defendant awaiting trial should be released.

In your case, because of both -- because of the nature of the charges against you and the sentences that you would be facing if you were convicted of those charges, that presumption is reversed.  And so there is a presumption under the law that Congress passed, a weight on the scale, that says somebody in your position faces -- facing a max of ten years on one count or on your -- on some of the charges, but also with the government attempting to enhance that to a minimum of 15 years for the career criminal issue that they have raised -- which, again, I'm not deciding -- but that kicks you into a status where you're -- there is a presumption that you should be detained.  Okay?

And even if I were to decide that that presumption shouldn't apply in this case, and I weigh different factors, and I'm going to tell you how I weigh them because it is going to be a very transparent decision to you -- and I see Ms. Silerio back there too, so it is a -- it is a transparent decision to everybody and to the government -- even if I were to weigh those factors and find that you had rebutted the presumption of detention, what Congress has said is that presumption remains as a weight on the scale.  All right?  It

is one of the factors at the end of the day that I'm supposed
to consider when I consider other things that the statute talks
about, which is the nature and circumstances of the offense
charged, the weight of the evidence against the person, the
person's history and characteristics, and any danger to the
community that is posed by the person's release.

So your case -- the burden of persuasion that you
should be detained remains on the government.  The government
has to prove to me either by clear and convincing evidence that
that you're a danger to the community or by a preponderance of
the evidence that there is a risk that you would flee if I
released you.

You never have to prove the contra, but you have to
produce evidence in the first instance that causes me to say
that presumption should fall away and that I should look at
these other factors.  But at the end of the day, the
presumption is one of the factors, in addition to the weight of
the evidence, nature of the crime charged, your personal
characteristics, and danger to the community that I weigh.  So
Congress has said it still stays in the case, so it helps the
government in its burden.

And if I were to find that you haven't rebutted the
presumption, and there is a presumption that you should be
detained or if I find, whether or not you rebutted the
presumption the balancing of the factors shows that the

government has shown by a preponderance of the evidence a risk

of flight or by clear and convincing evidence a danger to the

community, I still consider whether there are any conditions

that I can impose that would allow you to be released and that

would mitigate those risks.  Okay?

And the condition that you and Mr. Rascia are

suggesting is that you be released on home confinement to

Ms. Silerio's custody and to live in the home that she and her

mom and her child share.  Okay?  So it is a multi-factored

test.

I want you to be aware of this because I think you're

a smart guy, and I want you to know exactly what I am

considering for two reasons.  I want you to know it, and also

my decision is -- can potentially be appealable by either side,

and so either side should know what I am considering.

So I'm first going to think about the presumption of

detention and how -- what the factors are, whether or not you

have rebutted that presumption, I'm actually going to go

through all the other factors that I mentioned.  And the third

is I'm going to address whether there are any conditions that

mitigate the risk of flight or danger to the community.

And as I said at the outset, none of this has to do

with guilt or innocence.  It all has to do with what your

condition would be, what your status is going to be while

you -- while these charges continue to pend.  And,

unfortunately, in our courthouse, and maybe in courthouses,

federal courthouses across the country, that can be a decision

of significance because it could take a couple of years until

the case is tried.  It could be sooner.  I mean, you're

entitled to a speedy trial under -- but, sometimes given video

evidence, audio evidence, other things, it takes a while to get

these cases tried.  And if it does, and if I am determining

that you're going to stay in custody, I recognize that is a

significant issue for you, and so I take it seriously.  I'm not

asking for any sympathy, I'm supposed to make decisions like

this, but I just want you to know my thought process.  Okay?

          So on the presumption analysis, I -- you know, I have

to conclude that this is a case that Congress really had in

mind when it created this presumption to begin with.  You know,

it is -- you're facing a significant sentence.  You have been

involved over a long period of time in offenses, some -- you

know, and have been convicted of offenses involving guns and

drugs.  And Congress, when they created this -- in this

presumption, specifically talked about guns and drugs.

          And the Seventh Circuit has referenced that

Congressional intent in two important decisions that it issued

a while ago, and that is -- and they have been cited by the

government in what they filed, which is United States versus

Portis, which is 786 F.2d 758, and United States versus

Dominguez, which is 783 F.2d 702.

1     You have repeated firearm offenses.  You have got a

2  history of violence.  You have got repeated drug distribution

3  crimes.  You have got ties to and travel to a foreign country,

4  Mexico.  Your ties here, although you have been here all your

5  life, are not as strong, and they are a little bit weaker now

6  that your sister has decided not to support you.

7     You do have a tie with a -- you know, a relationship

8  of about a year with Ms. Silerio.  But it is not the kind of

9  strong family ties.  You don't have -- I think pretrial

10  services says you don't have ties with your child.  So it is

11  not the strong kind of family ties that are frequently held to

12  outweigh the presumption.

13     You are facing a long sentence if you are

14  convicted.  I mean, even if the government is wrong about the

15  career criminal enhancement, you're facing -- I think the

16  sentence is up to ten years is what Mr. Dunne told me.

17     Is that right?

18     MR. RASCIA:  Twenty.

19     THE COURT:  Up to 20.  Okay.  Thanks for the

20  correction.

21     And then the career criminal thing that they are

22  trying to -- that they are going to argue to the Court is a

23  minimum of 15, right?

24     MR. STORINO:  And a maximum of life, your Honor.

25     THE COURT:  Okay.  So those are serious sentences that

you are facing.  And, you know, the presumption deals with

cases in which somebody is facing a serious sentence.  There is

strong evidence in your case of gang involvement over

your -- over a significant period of time.  You know, I -- that

is a -- of all the factors that I just talked about, that's a

small one.  That's an associational issue.  But that is

something that Congress also says courts can take account of.

So this case could end if I were to say that you have

not rebutted the presumption of detention in the case.  All

right?  But I'm not going to that end because I think you're

entitled to my analysis of the other factors as well.  And the

order that I enter later today will acknowledge that whether or

not -- you know, I -- if I had to make the call, I would say

you haven't rebutted the presumption.  But I am going to say

even arguing that you have rebutted the presumption, I'm going

to go through the other factors.  All right?

And those factors, as I said, were the nature and

circumstances of the crime charged, the weight of the evidence,

your personal characteristics, and whether there is a danger to

the community if you are released.

And the nature of the offense, this is a serious

offense.  You're being charged with selling two guns as an

already convicted felon and some amount of cocaine.  Drugs and

guns are dangerous to the community.  So it is a serious

offense.  You know, people who buy guns often use those to hurt

other people.  You have been involved in that in your life.  I
mean, you have been convicted of, I think it was, conspiracy to
commit murder.  And the underlying facts in that case were that
the -- you gave a .9 millimeter Glock and .38 Special handgun
to somebody who ended up using it to kill somebody.  Those were
the charges, but those are also the charges that you were
convicted of in that case, and you have paid your debt to
society on that case, as Mr. Rascia said.  But that's conduct
that I can consider.

    And you have also fired a gun, long time ago.  You
were charged and convicted of that, shooting at somebody's
home.

    Your conviction -- you have a conviction of using
drugs while you were in jail.  And you have got at least two
situations when -- while on parole or on bond you committed
other crimes which you subsequently were convicted of.

    But on the nature of the offense, A, it is a serious
offense.  All right?  B, on the weight of the evidence, always
weighs in favor of the government at this particular point in
time because they are the ones who have got the evidence, and
you haven't had a chance to put your defense on.  But they have
audio and videotape evidence of the gun transactions and the
cocaine transactions with which you're charged.  The government
contends that you admitted this.  I don't know if you have or
not.  But the weight of the evidence at this point usually

favors the government.  But for the reason that it is early in
the case, I give that only some weight.

The most important factor in any analysis that any
Judge engages in at this -- is you, your personal
characteristics and your history.  And there are -- there are
several things that trouble me about this, Mr. Rosas.  One,
that you go back and forth to Mexico without a passport on not
one and not two, but on three occasions and recently, in 2014
and 2015.

Now I know Mr. Rascia has said I should credit your
honesty.  You have told pretrial services that you did that.  I
don't know if that -- I should credit your honesty or if that
was just something not smart to say, but you did tell pretrial
services that.

I don't -- I don't believe the story about the foot
bridge crossing with the driver's license.  Okay?  I mean, the
-- I understand that our border could be porous, but I
just -- I am not aware, and I think the government argued this,
of any government-run crossings like a foot bridge, which is
what you talked about, where all you have to do is show a
driver's license or, you know, anything else to get to and from
the country.

So, you know, my presumption from that, even though
this is something that I know pretrial services wouldn't have
known if you didn't raise it, is that you know how you get in

and out of the country without a passport easily, and you have

done it on multiple occasions.  And that really troubles me.

That troubles me in the area of risk of flight.  Okay?  Because

somebody who is facing a long sentence and who is in remission

from cancer at this point, and who has shown that since his

remission he goes back and forth to Mexico, you have a strong

incentive to go back there.  All right?  And not to deal with

the 20 years max or the 15-year minimum -- a 15-year minimum to

life.  That's a strong incentive.  And you're somebody who

knows how to get in and out of the country without a passport.

That is very troubling to me, full stop.

        The other thing that's troubling to me and that

undercuts the honesty issue is that you told pretrial services

that you currently have cancer, that you're receiving

chemotherapy every three months at Silver Cross Hospital.  And

you sat here during multiple hearings in this case while

Mr. Rascia was trying to get the medical records that you have

for that, and where the Court and counsel talked about the --

you know, your current health situation, which everybody was

understanding was currently suffering from cancer and needing

chemotherapy every three months.

        When the medical records were produced, they undercut

that you -- the medical records show, and nobody disputes that

now, that although you did have cancer, which is a serious

medical condition, and it had spread, you underwent treatment

for that in years past, and right now you're in remission.  And

the United States Marshal Service took you for a PET scan and a

full body scan, and the doctors reported that you are free of

cancer right now.

So the statement to pretrial services that you were

undergoing treatment for cancer was not true.  And, you know,

the reason that in trials where lawyers try and impeach a

witness to show they weren't telling the truth, what they want

the jury to understand is this person didn't tell the truth

about one thing, and so what else are they not telling the

truth about.  And that's true of Judges and juries.  And so the

question is, are you telling the truth about the foot bridge

and the crossing and the driver's license and all this was fine

or is there something else there on the crossing to Mexico?

Third factor that is very important in your situation

is the long history of not following the rules.  All right?

And if I am going to release you on bond, you have to follow

the rules.  All right?  You have to follow the rules on no

drugs, no guns.  There might be a condition that you not

affiliate with certain people or associate with certain

people.  And you have a long history of not following those

rules.

When you were in jail, you had drugs.  And I'm sure

you knew you weren't supposed to have drugs while in jail, and

you were convicted of that.

When you were released on parole for the -- for that crime -- no, I'm sorry for the conspiracy to commit murder charge, you were convicted of possessing, with intent to deliver, 100 to 400 grams of cocaine. When you were on -- and you went back to jail.

When you were -- when you were on bond in relation to that drug trafficking offense, you were arrested and convicted of a battery charge.

And now you -- at least what you are charged with now -- and, again, you're presumed innocent of those charges until you're proven otherwise, but you are a convicted felon. I'm sure you know that as a convicted felon you can't possess firearms. Yet you're charged with possessing at least two or maybe three firearms and selling them to people as well as drugs. So you're not a rule follower. All right?

And even crossing the border without a passport on the foot bridge indicates you're not a rule follower. And that troubles me if I am going to submit -- if I am going to release you on conditions that require you to be a rule follower.

But your entire adult life indicates a strong pattern of not following the rules. So, you know, your history and characteristics are weighing against you here.

In terms of danger to the community, the government has shown that there -- you have a history of guns and drugs and involvement with guns and drugs, and you're charged now

with two or three guns plus drugs.  Those are dangerous to the
community.  They just are.

But I still have to then think, to fulfill my
obligation here, I have to think, okay, even if Mr. Rosas
rebutted -- did not rebut the presumption and he is a risk of
flight by a preponderance of evidence, and even clear and
convincing evidence of danger, are there conditions that I can
impose that would mitigate those risks and allow you to be out
while you're fighting these charges or in?  And I -- and that's
the most difficult decision here.  Okay?

Ms. Silerio, proposed as your third-party custodian,
is a good person.  She came in here yesterday, and she
testified.  I have no question that she is a good person.  She
is caught in a difficult situation.  She's known you for about
a year.  She'd like you to be out of jail.  The most emotion
though that she -- and she wanted to say the right things when
she came in here.  And she said that as your third-party
custodian if you were violating the rules, she would call
pretrial services and let them know because she didn't want to
get in trouble for that.  I'm not 100 percent sure how much a
third-party custodian gets in trouble for something like that.
Okay?  If somebody puts up property for you and you flee, the
government takes that property, and that's real skin in the
game.

But the most emotion that Ms. Silerio showed here, and

it was honest emotion, was she doesn't want you going back to
jail, and I -- I can understand that.  I really can understand
that.  But that -- I'm balancing that against her also truthful
statement that she thinks she could do what is necessary to
make sure that you follow the rules.  I'm not 100 percent
confident of that.  I'm not even confident of that to say that
that's a condition that I could impose.

If she gets a job, she's not going to be home.  And
although her mother-in-law -- her mother is willing to have you
stay in the house and even support you, you know, your source
of support before was your sister, and she has withdrawn that
support, so you're on a very thin reed there.

So, you know, pretrial services, though, in its report
back in March and continuing recommends that there are
conditions that can be imposed that would mitigate the risk of
flight or danger to the community.  And I take those pretrial
services recommendations very seriously because they are
professors -- they are professionals, and they know a lot about
risk.  However their analysis does not consider the presumption
of detention under the Bail Reform Act.  When they made the
report, and I don't know that they have updated this at all
since then, they thought you had cancer because that's what you
told them.  They also understood you were being financially
supported by your sister.

And so to me the recommendation of release with

conditions in the pretrial services report is somewhat on shaky ground because as this case has developed, the facts upon which the pretrial service recommendation was made have not all turned out to be true.  And even without that, the presumption of detention is still in the case.

So I'm going to tell you that reluctantly I am going to continue to detain you.  All right?  I'm going to find that you haven't rebutted the presumption of detention.  But even if you had, I think the other factors that I described, the weight of the evidence, the nature and circumstances of the offense, your history and characteristics, and your -- and any danger to the community would still mitigate toward you continue in custody.  And I don't find that there are conditions that I can impose that would mitigate that risk.

In particular, the risk of flight is not mitigated by location monitoring.  Location monitoring mitigates danger to community because you can't -- if you went out and you were dealing with guns or drugs, the pretrial services know it and marshal knows it, and they can conduct an investigation.

But if somebody cuts off their wrist or ankle, their ankle bracelet, and goes to walk across a bridge to Mexico, location monitoring really doesn't do a whole lot with that because there is a delay.  And so, you know, location monitoring -- risk of flight often is mitigated by somebody with skin in the game putting up property, somebody close to

you.  We don't have that here.  And I'm not ruling on that.
But your easy -- easy access to, in the last two years, going
back and forth to Mexico in a way that I don't think is
government sanctioned is a real issue for me, as well as the
truthfulness with respect to the -- your health condition which
I addressed earlier.

So even if you rebut the presumption, I think that the
factors weigh in favor of continued detention.  And I don't
think there are conditions that I can impose now that would
mitigate that risk.

Obviously this decision, and Mr. Rascia knows this, is
appealable.  And my order that I am going to enter later today
is going to say that if it is appealed, you need to order the
transcript of the proceeding so that the district judge can
read the transcript as well as my written order.

And obviously things can change too.  I mean, right
now Mr. Rosas is in remission.  I am presuming by the letter
that I got from the MCC, the MCC feels that they could treat
Mr. Rosas if the cancer were to repeat.  But I don't know if
that's true or not, and I don't know whether arrangements would
need to be made so that he -- be made so that he could get
chemotherapy.  But I'm not dealing with any of that now.  I'm
dealing with what I have in front of me now and what the issues
are in front of me now and how I balance those.

So I'm going to grant the motion, the government's

1  motion, for continued detention both on risk of flight and

2  danger to the community regardless of the presumption or even

3  presuming the presumption is rebutted.  Because as I said to

4  you, Mr. Rosas, that presumption remains in the case and is a

5  weight on the scale that weighs toward detention.

6          That's my ruling.  Any questions?

7          MR. STORINO:  Not from the government, your Honor.

8          MR. RASCIA:  No.

9          THE COURT:  Thank you.

10          MR. STORINO:  Thank you, your Honor.

11      (Which concluded the proceedings.)

12                         CERTIFICATE

13          I certify that the foregoing is a correct transcript

14  from the digital recording of proceedings in the above-entitled

15  matter to the best of my ability, given the limitation of using

16  a digital-recording system.

17

18

19  */s/Pamela S. Warren*                  July 5, 2018
    Official Court Reporter                Date
20  United States District Court
    Northern District of Illinois
21  Eastern Division

22

23

24

25