UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 16 CR 107 |
| v. ) | |
| ) | Honorable Andrea R. Wood |
| GABRIEL ROSAS ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Over the course of two meetings, Gabriel Rosas sold three firearms and almost 30 grams of cocaine to a person who, unbeknownst to Rosas, was cooperating with federal law enforcement. Rosas was subsequently charged in a three-count superseding indictment, and pled guilty to Counts One and Two, which charged him with possession of a firearm by a convicted felon on the dates of the transactions between the defendant and the confidential source. As further detailed below, the defendant has a long and violent criminal history, and a sentence within the advisory custody Guidelines range is sufficient but not greater than necessary to satisfy the principles set forth in the United States Sentencing Guidelines and 18 U.S.C. § 3553(a).

I. **ADVISORY CUSTODY GUIDELINES CALCULATION**

Offense Level – Chapter Two

Counts One and Two group together. As set forth in the plea agreement, the parties agreed that, pursuant to Guideline § 2K2.1(a)(4), the base offense level was 20 because the defendant committed any part of the instant offense subsequent to sustaining one felony conviction for either a crime of violence or a controlled

substance offense, namely the conviction described in paragraph 9(c)(vi) of the plea agreement, that is, possession of a controlled substance with intent to deliver. (R. 154, at ¶9(b)(ii)). The probation office found that the defendant's base offense level was 24 in light of the above conviction as well as the defendant's conviction for conspiracy to commit first-degree murder. (PSR, ¶14). The government disagrees insofar as conspiracy to commit first-degree murder does not qualify as a crime of violence for purposes of the Sentencing Guidelines. *See United States v. D'Antoni*, 916 F.3d 658 (7th Cir. 2019). The probation office further determined that the defendant's conviction for aggravated battery likewise did not qualify as a crime of violence. (PSR, at ¶15). The government agrees -- the defendant was convicted under the insulting or provoking nature of the Illinois aggravated battery statute and thus, that conviction does not qualify as a crime of violence under the Guidelines. *See United States v. Evans*, 576 F.3d 766 (7th Cir. 2009). Accordingly, the government's position is that the defendant's base offense level is 20 based on the conviction for possession of a controlled substance with intent to deliver, as set forth in the plea agreement.

<u>Number of firearms under § 2K2.1(b)(2)</u>

The probation office also added two levels under § 2K2.1(b)(1) because the offense conduct included at least three firearms. (PSR, at 16). The government agrees that this two-level increase applies, although it was not included in the plea agreement.

<u>Trafficking of firearms under § 2K2.1(b)(5)</u>

As further set forth in the plea agreement, it is the government's position that,

pursuant to Guidelines § 2K2.l(b)(5), the offense level is increased by four levels because defendant engaged in the trafficking of firearms. (R. 154, at ¶9(b)(iii)). The defendant disagrees that this enhancement applies. The probation office determined that this specific offense characteristic applied. (PSR, at ¶17).

Section 2K2.1(b)(5) provides for a four-level adjustment if the defendant engaged in firearms "trafficking" in connection with the firearms offense of conviction, and trafficking is defined as (1) selling at least two firearms to (2) someone whose possession would be unlawful or who intends to use the firearms unlawfully. U.S.S.G. § 2K2.1 n. 13(A).[1] The defendant transferred or disposed of more than two firearm to another person (that is, the confidential source), and therefore, the question is whether the defendant "knew or had reason to believe" that (1) transfer to the confidential source was unlawful or (2) the confidential source intended to use the firearms unlawfully. The government contends that several facts support the inference that the defendant knew or had reason to believe that the confidential source would use or dispose of the firearms unlawfully.

First, during the second transaction on March 18, 2015, the defendant sold the confidential source 29 grams of cocaine along with the two firearms. The confidential source's agreement to buy illegal controlled substances certainly suggested to the defendant that the source was likely "intended to use or dispose of the firearm[s]

---

[1] The government notes that the Guidelines allow for the number of firearms enhancement under (b)(1) and the trafficking enhancement under (b)(5). U.S.S.G. 2K2.1 cmt. N 13(D) ("In a case in which three or more firearms were both possessed and trafficked, apply both subsections (b)(1) and (b)(5)").

3

unlawfully." U.S.S.G. § 2K2.1 n. 13(A)(II).

Second, during the same transaction on March 18, the confidential source and the defendant discussed recent violence in the area and how the source and fellow gang members needed firearms to retaliate. Specifically, the confidential source advised the defendant that he (the source) needed to "grab that [firearm] right quick, cause they just, they just lit this n-----'s crib up," referring to why the source needed the firearm quickly and the source's purported plan to give the firearm to fellow gang members. The defendant asked the source who did the shooting, and the CS replied, "them Hooks [Vice Lords street gang]," a rival of the Latin Kings, the gang to which the defendant and the confidential source belonged. The confidential source stated: "That shit's going down. It's like a war zone," referring to the ongoing battle between the Latin Kings and Vice Lords. Later in the same conversation, the confidential source advised the defendant that he (the source) planned to drop the guns off in the "neighborhood … because they they really need it," referring to the Latin Kings street gang. The conversation between the defendant and the confidential source demonstrate that the source – as far as the defendant understood – intended to use or dispose of the firearms unlawfully by providing them to fellow gang members to use to retaliate.

Based on the foregoing, the government contends that the defendant knew or had reason to believe that the source intended to use or dispose of the firearms unlawfully in light of the source's contemporaneous purchase of illegal narcotics and the source's stated purpose to provide the guns to fellow gang members to use in a

4

violent conflict with another gang.

<u>"In Connection with Another Felony Offense" under § 2K2.1(b)(6)(B)</u>

As set forth in the plea agreement, it is also the government's position that, pursuant to Guidelines § 2K2.l(b)(6)(B), the offense level is increased by four levels because defendant possessed the firearm in connection with another felony offense. The defendant disagrees that this enhancement applies. The probation office found that this enhancement did not apply. (PSR, at ¶¶18-20).

Section 2K2.1(b)(6)B) provides for a four-level increase where the defendant (1) used or possessed the firearms in connection with another felony, or (2) possessed or transferred the firearm with knowledge, intent, or reason to believe that they will be used in connection with another felony offense. The government contends that the defendant transferred the firearms to the confidential source with knowledge, intent, or reason to believe that they would be used in connection with another felony offense.

For the same reasons noted above with respect to the trafficking enhancement,[2] the defendant and the confidential source discussed the source's intention and plan to bring the firearms to fellow gang members to use and retaliate against other persons. In point of fact, the defendant asked about the violent conflict

---

[2] Application of the trafficking enhancement under (b)(5) and the in-connection-with enhancement under (b)(6)(B) is *not* double counting. *See United States v. Rodriguez*, 884 F.3d 679, 681 (7th Cir. 2018) ("Nicolas Rodriguez argues that the district court improperly double counted when it applied both the trafficking and other-felony enhancements. But double counting is only forbidden when the text of the guidelines or the commentary expressly prohibits it. Because the guidelines do not prohibit simultaneous application of the trafficking and other-felony enhancements, we AFFIRM the district court's sentence.").

and the source responded that, "It's like a war zone." In this way, the context of the conversation is clear, and the defendant transferred the firearms to another person with knowledge, intent, or reason to believe that they will be used in connection with another felony offense. *See United States v. Jemison*, 237 F.3d 911, 918 (7th Cir. 2001) (applying the "in connection with another felony offense" enhancement under subsection (b)(5) where the defendant admitted he intended to provide guns to a gang and explaining: "We are well aware that judges and the public are not blissfully ignorant of the connection between criminal violence and street gangs. Like the trial judge stated, we believe it would be "naive" for either the trial court or this court to conclude that Carter never had any reason to believe that the firearms he supplied to the Gangster Disciples would be used in the commission of future felonies.").

<u>Obstruction of justice and acceptance of responsibility – Chapter 3</u>

As also set forth in the plea agreement, it is the government's position that, pursuant to § 3Cl.l, the offense level is increased by two levels because the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the prosecution. Along the same lines, the government contends that the defendant is not entitled to the reduction for acceptance of responsibility.

Section 3C1.1 provides for a two-level upward adjustment where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." *United States v. Sandoval*, 747 F.3d 464, 468,

(7th Cir. 2014). Application notes 4(F) and (H) to Guideline § 3C1.1 provides examples of obstruction of justice, including, among others "providing materially false information to a judge or magistrate judge" and "providing materially false information to a probation officer in respect to a presentence or other investigation by a court," respectively. U.S.S.G. § 3C1.1, cmt. n. 4(F) & 4(H). The government bears the burden to prove beyond a preponderance of the evidence that the obstruction applies. *United States v. Ellis*, 548 F.3d 539, 545 (7th Cir. 2008) (citation omitted).

As set forth in the government's version of the offense, the defendant made false statements to the magistrate judge during the bond hearings in this matter, in which the defendant claimed to be suffering from an illness when, in truth and fact, he was not. Specifically, the defendant advised the pretrial services officer that he had been diagnosed with cancer in 2012 and that the cancer spread to his abdomen, lungs and spine. Medical records for the defendant demonstrated that, at the time of the detention hearings, the defendant no longer suffered from cancer. Attached to the government's version of the offense as Exhibit 6 was a transcript of a detention hearing on April 8, 2016, in which the magistrate judge found that the defendant lied to pretrial services about his then-health situation:

> The other thing that's troubling to me and that undercuts the honesty issue is that you told pretrial services that you currently have cancer, that you're receiving chemotherapy every three months at Silver Cross Hospital. And you sat here during multiple hearings in this case while Mr. Rascia was trying to get the medical records that you have for that, and where the Court and counsel talked about the -- you know, your current health situation, which everybody was understanding was currently suffering from cancer and needing chemotherapy every

7

> three months.
>
> When the medical records were produced, they undercut that you -- the medical records show, and nobody disputes that now, that although you did have cancer, which is a serious medical condition, and it had spread, you underwent treatment for that in years past, and right now you're in remission. And the United States Marshal Service took you for a PET scan and a full body scan, and the doctors reported that you are free of cancer right now.
>
> *So the statement to pretrial services that you were undergoing treatment for cancer was not true.*

PSR, Government's Version of the Offense, Exhibit 6, at 16-17 (emphasis added).

The defendant's health status was no doubt material to the Court's bond determination, which is borne out by the fact that the Court held multiple bond hearings and the parties went to great lengths to obtain the defendant's medical records and determine his health status, as reflected in above passage from the magistrate judge.

The government contends that the defendant's lies about his health situation to pretrial services and the Court constituted an attempt to obstruct justice under the Guidelines. *See e.g., United States v. Bedolla-Zavala*, 611 F.3d 392 (7th Cir. 2010) (affirming application of obstruction-of-justice enhancement based on defendant's act of providing a false name and date of birth to the pretrial services officer who was preparing a bail report for the court, and of falsely representing himself to be a legal resident of the United States).

Turning to acceptance of responsibility, the Guidelines make it clear that, where a defendant engages in conduct that results in the obstruction enhancement,

8

that defendant "ordinarily" has not accepted responsibility and hence will not receive the customary three points that goes along with such acceptance. U.S.S.G. § 3E1.1, cmt. n. 4. The general suggestion that the defendant who obstructed justice has also not accepted responsibility "is a presumption that can be rebutted by the defendant only in 'extraordinary cases.'" *United States v. Black*, 636 F.3d 893, 900 (7th Cir. 2011). A defendant, as such, bears the burden to rebut the presumption and demonstrate acceptance of responsibility. *United States v. Sherwood*, 47 F.3d 1174, 1995 WL 76863, at *3 (7th Cir. 1995) (Table).

The government contends that the defendant cannot demonstrate that his case qualifies as extraordinary. While the defendant pled guilty, pleading guilty is not extraordinary. *United States v. Monem*, 104 F.3d 905, 910-11 (7th Cir. 1997). Even cooperating with law enforcement is not extraordinary. *United States v. Yusuff*, 96 F.3d 982, 989-90 (7th Cir. 1996).

<u>Criminal History Category</u>

As set forth in the plea agreement, and confirmed in the PSR, (PSR, at 41), the defendant has nine criminal history points, which places him in criminal history category IV.

<u>Advisory Guidelines Range</u>

The government contends that a total offense level of 32, coupled with a criminal history category of IV, results in an advisory sentencing guidelines range of 168-210 months' imprisonment.

9

## II. THE SECTION 3553(A) FACTORS WARRANT A SENTENCE OF 168 MONTHS' IMPRISONMENT

### a. NATURE AND CIRCUMSTANCES OF THE OFFENSE

The defendant stands convicted of trafficking in firearms and distributing cocaine, and these are serious offenses that are deserving of a serious sentence.

Most aggravating in defendant's conduct is the sale of three firearms to a person who the defendant ostensibly believed intended to distribute the same firearms to other persons to be used to commit crimes. The unlawful and informal transfer of firearms among private persons, especially members of criminal street gangs, frustrates the job of law enforcement. Firearms move freely and quickly among members of criminal street gangs, just as the defendant sold firearms to a fellow member of the Latin Kings. And the over-proliferation of illegal firearms in the streets, especially in the hands of persons who Congress has said cannot be trusted with them such as felons like the defendant, contributes to the stubbornly high levels of violence in and around the Chicagoland area.

### b. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The defendant, who is now 43 years old, is a violent person with a violent criminal history.

The defendant earned his first adult criminal conviction at the age of 18 when he was convicted of unlawful use of a weapon. (PSR, at ¶34). In that case, the defendant possessed a firearm outside his residence, and was sentenced to a term of conditional discharge. (PSR, at ¶34). Defendant's criminal conduct quickly escalated

however to active violence. On May 27, 1995, the defendant discharged a firearm at two other persons. (PSR, at ¶35). The defendant was convicted of one count of aggravated discharge of a firearm and sentenced to four years' custody. (PSR, at ¶35). While on parole, the defendant subsequently violated his conditions and was readmitted to custody in February 1997.

The defendant's criminal conduct only worsened from there when he was convicted of conspiracy-to-commit-murder in November 1998. (PSR, at ¶36). There, the defendant agreed with other persons to commit murder and provided two handguns to his coconspirators in order to carry out the violent act. (PSR, at ¶36). The defendant received a sentence of 10 years' custody, but appears to have served significantly less when he was released in 2004. (PSR, at ¶36).

Even when in prison and awaiting trial on the conspiracy-to-commit-murder charge, the defendant's criminal conduct continued unabated. Seven days after he was arrested for the murder charge, on June 28, 1996, the defendant possessed contraband inside the Sheridan Correctional Center, specifically cannabis, and was sentenced to two years' custody. (PSR, at ¶37).

The defendant was eventually released from custody in or around May 2004. (PSR, at ¶36). Within one year, the defendant was arrested again, this time for possession of 100-400 grams of cocaine with intent to deliver. (PSR, at ¶39). While on bond for that offense, the defendant picked up another offense – aggravated battery in October 2006, when the defendant struck a female victim in public. (PSR, at ¶40). Those two convictions kept the defendant in custody until on or about August 13,

11

2014. (PSR, at ¶39 & 40). *Within four months of the expiration of his parole*, the defendant returned to criminal conduct and began selling firearms to the confidential source in the instant case in or around December 2014.

The defendant may not qualify, as a technical matter, as an armed career criminal under Title 18, United States Code, Section 924(e), but the defendant's criminal history reflects the same. The defendant's criminal history runs the gamut: firearm possession, drug dealing, and active violence, including discharging weapons, battery and conspiring to commit murder. The defendant's criminal history is both egregious and consistent. What is clear from the defendant's near-nonstop criminal activity is that he has never been deterred, and a serious term of imprisonment is needed to not only deter him and others, but to protect the public from further crimes of the defendant.

### III.  TERM OF SUPERVISED RELEASE

Given the circumstances of the offense and the history and characteristics of the defendant, including the prior commission of criminal conduct while on bond and other forms of court supervision, the government recommends the maximum term of three years' supervised release. The defendant would benefit from being under the watchful eye of the Court.

### IV.  CONCLUSION

For the reasons set forth above, and in consideration of the factors enumerated under 18 U.S.C. § 3553(a), the government respectfully requests that this Court impose a sentence within the Guidelines range of 168 months' imprisonment,

followed by three years of supervised release.

>Respectfully submitted,
>
>JOHN R. LAUSCH, JR.
>United States Attorney
>
>By: /s/ *Timothy J. Storino*
>Timothy J. Storino
>Assistant United States Attorney
>219 S. Dearborn Street, 5th Floor
>Chicago, Illinois 60604
>(312) 353-5347

Dated: October 6, 2020